IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Alfar Kynwulf, | : | |
| Plaintiff | : | Civil Action 2:09-cv-1056 |
| v. | : | Judge Frost |
| Michael Sheets, *et al.*, | : | Magistrate Judge Abel |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

This matter is before the Court pursuant to the motion of Defendants for summary judgment (Doc. 18).  For the reasons set forth herein, it is recommended that the motion be granted.

**Factual background**.  Plaintiff Alfar Kynwulf ("Kynwulf"), known to the Ohio Department of Rehabilitation and Correction ("ODRC") as Darryl Blankenship, is a prisoner incarcerated at Chillicothe Correctional Institution.  His complaint alleges that during December 2007 and January 2008 he was incarcerated in the Ross Correctional Institution ("RCI").  Plaintiff Kynwulf is an adherent of the Asatru faith, and has participated in two other lawsuits concerning religious accommodations for Asatru.

On December 5, 2007, this court held a preliminary injunction hearing in *Eberle v. Wilkinson*, Case No. 2:03-cv-0272, at which Plaintiff testified.  He alleges

1

that, upon his return, several staff members at RCI confronted him about his lawsuits and the recent hearing, and warned him to "watch his back".  On December 28, 2007, Plaintiff was placed in Security Control Investigative Status, along with two other inmates, John Frazier ("Frazier") and Tommie Gibson ("Gibson").  On January 4, 2008, Frazier and Gibson were released from segregation.  However, Kynwulf was not released until January 22, 2008.

Kynwulf alleges that on December 31, 2007, he, Frazier, and Gibson were escorted from the segregation unit to the property vault to pack up their belongings, and that the escorting officer commented that the three had been placed in segregation by orders of Warden Michael Sheets ("Sheets") and Investigator Gary Sorrell ("Sorrell"), who had taken "a special interest" in them, and that it looked like the three had "sued the wrong people".  During his protracted detention, Kynwulf alleges, Captain Duncan on at least three occasions removed Kynwulf from his cell and brought him to his office to berate him about his faith and his litigation, and to inform him that Sorrell had his legal materials and that Kynwulf was in segregation because of his lawsuits.[1]

Defendants concede that Kynwulf, Frazier, and Gibson were placed in administrative segregation, that Frazier and Gibson were let go after a few days, and that Kynwulf remained in segregation for three weeks.  However, Sorrell submitted an affidavit accompanying his motion for summary judgment stating

---

[1] Duncan has filed an affidavit denying all of these allegations.  (Doc. 18-4.)

that, on December 28, 2007, RCI received information from the ODRC Chief Inspector's Office that a letter had been intercepted at the Lebanon Correctional Institution which indicated that an inmate known as "Wolfman" might be involved in a plot to smuggle bullets into RCI.  Sorrell stated that RCI employees identified Kynwulf, Frazier, and Gibson as persons with names or nicknames similar to "Wolfman", and that the three were immediately placed in Security Control Investigative Status.  After nothing was found in their cells, Sorrell ordered the three released from segregation on January 4, 2008.  However, according to Sorrell, unbeknownst to him Kynwulf was then in the infirmary, to which the release instruction was not relayed, and was then simply returned back to segregation on January 8, where he remained until the error was resolved.  (Doc. 18-1.)  Sheets also submitted an affidavit to accompany his motion for summary judgment, describing the "Wolfman" investigation and stating that he had no knowledge that Kynwulf had been retained in segregation after January 4, 2008.  (Doc. 18-5.)

**Summary judgment**.  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th

Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (concluding that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations [...] but [...] must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324. Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

<u>Retaliation</u>. A claim of retaliation, such as that which Plaintiff puts forward

here, can arise in various statutory contexts.  One of these, courts have recognized, is an action under 42 U.S.C. §1983 claiming that government officials retaliated against a plaintiff prisoner for exercising a constitutional right.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999).  In order to bring a claim for retaliation, a plaintiff must show that he engaged in conduct protected by the Constitution or by statute, that the defendant took an adverse action against the plaintiff, and that this adverse action was motivated, at least in part, because of the protected conduct.  *Id.* at 386-87.  One such constitutionally protected activity would be exercising the constitutional right of access to the court system, by participating in litigation challenging the conditions of confinement.  *Smith v. Craven*, 61 Fed. Appx. 159 (6th Cir. 2003).  An adverse action is one "that would deter a person of ordinary firmness from continuing to engage in that conduct."  *Thaddeus-X*, 175 F.3d at 394.

Plaintiff has alleged, and it is not in dispute, that he is and has been the participant in various pieces of litigation involving conditions of confinement and religious accommodations.  The remaining questions at issue are whether the defendants took adverse actions against him, and whether such adverse actions were motivated, at least in part, because of the protected conduct.

**Adverse actions**.  Defendants point out in the first place that as to Defendant Captain Geoffrey Duncan, Plaintiff alleges only that Duncan verbally harassed him and taunted him for his faith and for participating in litigation.  *See* Pl's Complaint at ¶ 17.  They argue, citing *Emmons v. McLaughlin*, 874 F.2d 351 (6th Cir. 1989)

and *Washington v. Webster*, 883 F.2d 76 (6th Cir. 1989), that mere words are not actionable under §1983. Defendants are correct. The Sixth Circuit Court of Appeals, in *Emmons,* held that even a spoken threat of serious harm which puts the listener in fear of his life (let alone the belittling and mockery Kynwulf alleges here) does not amount to an actual infringement of constitutional rights. *Emmons*, 874 F.2d at 354. The *Washington* court found likewise that retaliatory verbal threats are not enough to support a cognizable claim. *Washington*, 883 F.2d 76 at *1-2. *See also Williams v. Craigie*, 110 F.3d 66 (6th Cir. 1997) (verbal threats to a prisoner are not sufficient to state a claim for retaliation). An inmate has no right to be free of verbal abuse. *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987). Defendants do not dispute, however, that being held in segregation for an extended period of time might be enough "to deter a person of ordinary firmness" from exercising his constitutional rights.

 **Causal connection**. Plaintiff and Defendants present completely different explanations for why Plaintiff was held in segregation for an extended period of time. Plaintiff claims that it was in retaliation for the practice of his Asatru faith and for litigation relating to it. Defendants claim that the segregation was pursuant to a legitimate prison investigation of a suspicious communication, and that the failure to promptly release him was due to an administrative error.

 A party opposing summary judgment has, under Fed. R. Civ. P. 56(c), an obligation to cite to particular parts of materials in the record to demonstrate an assertion that genuine issues of material fact remain. Alternately, under Rule

6

56(d), he can request that the Court deny or defer ruling upon the motion, if he "shows by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify" his opposition. Defendants assert, through their motion, that no genuine issues of material fact exist in this matter, and that as a matter of law Plaintiff cannot carry his burden of proof on the question of whether their actions were in retaliation for Plaintiff's protected conduct.

However, Plaintiff has, in his opposition to summary judgment, neither cited to particular parts of materials in the record nor shown that he cannot present such materials. He argues that Defendants' claim that he was detained as part of the "Wolfman" investigation is illogical on its face. Furthermore, with respect to Defendants' claim of mistaken failure to timely release him, he asserts:

> The fact is, the inmate move sheet will reveal that Plaintiff was to be released on January 4, 2008. This move was stopped by Defendants Sorrell and Sheets.
>
> The inmate move sheet for January 7, 2008, will reveal Plaintiff was knowing [sic] placed in segregation.
>
> The logs for January 8, 2008 will reveal that Plaintiff was knowingly placed on security control investigative status and held until January 22, 2008.

(Doc. 39 at 2-3.) He also states that "Plaintiff has recently written to Tommie Gibson and John Frazier to ask them to supply affidavits on this matter and would ask permission to supplement this document when responses are received." (*Id.* at 4.)

Earlier in this litigation, Plaintiff filed a motion to compel production of

7

documents. (Doc. 17.) In this, he asked that the Court order Defendants to produce unit logsheets for January 10, 2008 through January 22, 2008 which were unredacted. He also asked for the identities and contact information for Tommie Gibson and John Frazier. The Court granted this request in part, ordering Defendants to produce the information concerning Kynwulf's fellow inmates, but finding that Defendants were justified in redacting information from the logs concerning all prisoners other than Kynwulf. (Doc. 25.)

Plaintiff's references to what the January 4, 7, and 8 move sheets "will reveal" are therefore confusing, as Plaintiff did not attach such materials to his brief. His motion to compel addressed only logs from January 10 through January 22. Had Plaintiff requested earlier move sheets and been refused them, he presumably would have demanded them in his motion to compel. However, had he requested earlier move sheets and been provided them, Plaintiff would (or should) have attached them to his memorandum contra. Moreover, if Plaintiff erroneously referred to January 4, 7, and 8 and meant other days for which he did have log sheets, he would (or should) have attached those. Finally, the only materials which Plaintiff actually stated in his memorandum contra that he lacked were affidavits from Gibson and Frazier.[2]

---

[2] Judging from Plaintiff's complaint, however, Gibson and Frazier could offer testimony only as to whether the escorting officer stated that they had been placed in administrative segregation because Kynwulf (or other Asatru) had filed litigation. *See* Complaint at ¶¶ 11-12. In its order granting Plaintiff's motion to compel, the Court found that the testimony of Gibson and Frazier concerning what they heard the escorting officer say "has significance for Plaintiff's retaliation

8

The Court has therefore been presented with no basis under Rule 56(d) to find that Plaintiff is unable to present facts essential to justify his opposition. It has also been presented with little support for Plaintiff's rebuttals of Defendants' arguments. Defendants have presented evidence, in the form of affidavits and documents, which they say demonstrates that there is no genuine dispute of material fact that Plaintiff's detention in administrative segregation was pursuant to a legitimate internal investigation of a suspected hazard to prison security, and that its lengthy duration was due to an administrative error.

In the first place, the Court finds Defendants' argument that Plaintiff failed to state a First Amendment retaliation claim to be unfounded. Defendants argue that Plaintiff failed to provide them with adequate notice of the basis of his §1983 claim and its factual underpinnings with sufficient specificity to amount to more than vague or conclusory allegations. A review of Plaintiff's complaint

---

claim". (Doc. 25 at 4.) However, their testimony, even were it available to Plaintiff and even were it to corroborate the account in his complaint, would not demonstrate that there is a genuine issue of material fact as to the real motivations of Sheets and Sorrell. As the Court also noted, Plaintiff does not allege that the escorting officer told Kynwulf, Gibson, and Frazier that they were being placed in segregation because they were adherents of Asatru, but rather because Sheets and Sorrell had "a special interest" in them. The evidence Defendants present concurs that Sheets and Sorrell did indeed have a special interest in them, but also supports their claims that the interest was other than the persecution of Asatru.

Plaintiff also alleged that the escorting officer stated "something akin to 'looks like you sued the wrong people. If you quit suing people you guys wouldn't be in the hole.'" Complaint at ¶3. This allegation, even were it corroborated by Gibson and Frazier, again would not demonstrate a genuine issue of material fact as to the real motivations of Sheets and Sorrell, because it purports on its face to be nothing more than an opinion by a nonparty defendant as to what was going on.

demonstrates that he pled that he had engaged in protected activity in the form of Asatru worship and litigation (¶7, 8), that he had been placed in administrative segregation and not released for a protracted period of time (¶¶ 10, 13, 14, 15), and that he had been informed by Defendant Duncan "[o]n at least three occasions, between on or about January 2, 2008 and January 16, 2008" that the reason for this was his protected activities and that Defendant Sorrell was in possession of his legal documents (¶17). Defendants' belated argument that Plaintiff's claims are too vague to litigate is without merit.

Nevertheless, the Court will also not accept Plaintiff's argument that Defendants' claims concerning the "Wolfman" investigation are irrational on their face. Plaintiff states that it is apparent from the letter provided that "Wolfman" cannot be an inmate, because he is instructed by "The Ant" to go to Wal-Mart and purchase items such as gunpowder, an activity clearly beyond the abilities of an inmate. (Doc. 39 at 2.) Therefore, argues Plaintiff, Defendants' justification for detaining inmates pursuant to this investigation cannot be valid. In the first place, the Court notes that the letter does not by its text preclude the possibility that "Wolfman" was an inmate receiving instructions on what to do after an upcoming release. More generally, however, the Court will not second-guess Defendants' conclusion that "any reasonable prison official would err on the side of safety to assure that no staff member or inmate is put at risk of serious injury" by the smuggling of ammunition into Ross Correctional Institution. Defendants accurately cite the warning of the United States Supreme Court in *Bell v. Wolfish*, 441 U.S.

520, 540 fn 23 (1979) that courts should "ordinarily defer" to prison administrators' "expert judgment in such matters". The Court has no basis upon which to overturn a conclusion of RCI's staff or investigators that the "Wolfman" letter merited an internal search for persons who might fit such a moniker, even if it was unclear whether such a person was supposed to actually be in RCI.

In sum, Defendants have presented evidence to support their arguments that Kynwulf was, like Frazier and Gibson, detained pursuant to the search of Sheets and Sorrell for a prospective "Wolfman" who might be involved in a smuggling plot, and that he was, due to an administrative error, released very late from administrative segregation. Plaintiff has offered nothing other than his own allegations that an escorting officer told him that he was probably in trouble for engaging in litigation and that Duncan removed him from his cell periodically to belittle Asatru and inform him that he was in segregation because of his litigation. He has not presented, nor offered any reason why he cannot present, inmate move sheets which he says would show that Sheets and Sorrell had deliberately kept him in segregation, or any other evidence concerning their allegedly retaliatory motivations. Plaintiff therefore has not satisfied his obligation under Rule 56 to present evidence demonstrating that there is a genuine issue of material fact as to the question of whether the actions of Sheets and Sorrell were in retaliation for his protected activities. Defendants Sheets and Sorrell are accordingly entitled to summary judgment on this claim.

**Conclusions**. Because Plaintiff has not alleged any conduct on the part of

Defendant Duncan which would amount to an adverse action, and because there is no genuine issue of material fact as to whether Defendants Sheets and Sorrell acted in retaliation for Plaintiff's protected legal and religious activities, I **RECOMMEND** that Defendants' motion for summary judgment (Doc. 18) be **GRANTED**.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the party thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991).

                                                       s/Mark R. Abel  
                                                       United States Magistrate Judge