IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Alfar Kynwulf,

           Plaintiff                        Civil Action 2:09-cv-1056

  v.                                      Judge Gregory Frost

Warden Michael Sheets, *et al.*,          Magistrate Judge Abel

           Defendants.

<u>ORDER</u>

      This matter is before the Court pursuant to the objections of Plaintiff Alfar Kynwulf ("Kynwulf") to the December 9, 2010 Report and Recommendation of the Magistrate Judge, which recommended that Defendants' motion for summary judgment be granted.

      The Report and Recommendation set forth the factual background of this case in some detail. Plaintiff, who is incarcerated under the name Darryl Blankenship, was at the time relevant to this lawsuit an inmate at the Ross Correctional Institution ("RCI"). He is an adherent of the Asatru religion, and has participated in past litigation concerning accommodations for his coreligionists. In December 2007, shortly after returning from a hearing in one of his lawsuits, he and two other inmates were placed in investigative segregation. Kynwulf alleges that the other two inmates, nonparties John Frazier ("Frazier") and Tommie Gibson ("Gibson") were also Asatruar, and that the officer who escorted them to segregation

1

commented that Defendants Warden Michael Sheets ("Sheets") and Investigator Gary Sorrell ("Sorrell") had taken an interest in them and that it looked like they had sued the wrong people. Frazier and Gibson were released from segregation after a few days, while Kynwulf was kept for three weeks. During his time in segregation, Kynwulf alleges, Defendant Captain Geoffrey Duncan ("Duncan") periodically called him to his office to threaten and berate him about his religion and litigation, and also informed him that Kynwulf was in segregation because of his lawsuits. Kynwulf has brought suit under 42 U.S.C. §1983, alleging that Defendants retaliated against him for exercising his constitutional rights to free exercise of religion and of access to the court system.

Defendants state that on December 28, 2007, RCI received information from the Ohio Department of Rehabilitation and Correction ("ODRC") that a letter had been intercepted at the Lebanon Correctional Institution that indicated that an inmate known as "Wolfman" might be involved in a plot to smuggle bullets into RCI. Defendants allege that RCI staff identified Kynwulf, Frazier, and Gibson as persons with names or nicknames similar to "Wolfman", and that they were consequently taken to segregation while the matter was being investigated. However, they claim that Kynwulf was, during his stay in segregation, transferred to the infirmary. In his absence, the warden ordered the release from segregation of the three under investigation. Due to an administrative error, this instruction was not sent to the infirmary. When Kynwulf left the infirmary, he was sent back to segregation rather than to his cell, and remained in segregation for three weeks

2

until the error was discovered.

In his Report and Recommendation, the Magistrate Judge set forth the legal standard under which motions for summary judgment are reviewed. He also stated that a plaintiff bringing an action under 42 U.S.C. §1983 for retaliation must show that he engaged in conduct protected by the Constitution or by statute, that the defendant took an adverse action against the plaintiff, and that this adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 386-87 (6th Cir. 1999). He found that Defendant Duncan's alleged verbal harassment did not, as a matter of law, amount to an infringement of constitutional rights. The Magistrate Judge found further that Kynwulf had failed to present any evidence that the actions of Sheets and Sorrell in placing him in administrative segregation were motivated by Plaintiff's religion or his participation in litigation:

> In sum, Defendants have presented evidence to support their arguments that Kynwulf was, like Frazier and Gibson, detained pursuant to the search of Sheets and Sorrell for a prospective "Wolfman" who might be involved in a smuggling plot, and that he was, due to an administrative error, released very late from administrative segregation. Plaintiff has offered nothing more than his own allegations that an escorting officer told him that he was probably in trouble for engaging in litigation and that Duncan removed him from his cell periodically to belittle Asatru and inform him that he was in segregation because of his litigation. He has not presented, nor offered any reason why he cannot present, inmate move sheets which he says would show that Sheets and Sorrell had deliberately kept him in segregation, or any other evidence concerning their allegedly retaliatory motivations. Plaintiff therefore has not satisfied his obligation under Rule 56 to present evidence demonstrating that there is a genuine issue of material fact as to the question of whether the actions of Sheets and Sorrell were in retaliation for his protected

>activities. Defendants Sheets and Sorrell are accordingly entitled to summary judgment on this claim.

(Doc. 49 at 11.)

Kynwulf has brought objections to the Report and Recommendation. Chief amongst these is a reiteration of his argument against summary judgment that Defendants' story of an investigative search for "Wolfman" is implausible on its face. He argues that the "Wolfman" letter offered by Defendants clearly demonstrates that whoever Wolfman is, he is not an inmate, as he is asked in the letter to perform actions such as going to Wal-Mart to purchase gunpowder that are impossible for an inmate. Kynwulf asserts also that Defendants have wrongly denied that Frazier is Astruar as well, and that Frazier has furthermore stated that he has never been known by the nickname "Wolf". The Magistrate Judge, confronted with these objections, correctly stated:

>In the first place, the Court notes that the letter does not by its text preclude the possibility that "Wolfman" was an inmate receiving instructions on what to do after an upcoming release. More generally, however, the Court will not second-guess Defendants' conclusion that "any reasonable prison official would err on the side of safety to assure that no staff member or inmate is put at risk of serious injury" by the smuggling of ammunition into Ross Correctional Institution. Defendants accurately cite the warning of the United States Supreme Court in *Bell v. Wolfish*, 441 U.S. 520, 540 fn 23 (1979) that courts should "ordinarily defer" to prison administrators' "expert judgment in such matters". The Court has no basis upon which to overturn a conclusion of RCI's staff or investigators that the "Wolfman" letter merited an internal search for persons who might fit such a moniker, even if it was unclear whether such a person was supposed to actually be in RCI.

(Doc. 49 at 10-11.) Kynwulf has not shown that Defendants' purported

4

investigative efforts were so self-evidently ineffective or irrelevant that a genuine issue of material fact exists as to whether they were really attempting to locate "Wolfman" and get to the bottom of the matter. This conclusion is not affected by the question of whether Frazier is an adherent of Asatru or not.[1] Kynwulf argues also that ODRC policy requires that all inmates must be accounted for and their locations known at all times, which precludes the possibility of an administrative oversight such as Defendants claim. However, Defendants have claimed not that they lost Plaintiff in their system, but rather that instructions for him to be sent back from administrative segregation were not properly acted upon because Plaintiff was temporarily out of segregation in the infirmary when they arrived.

---

[1] Kynwulf, as noted above, claims that both Frazier and Gibson were Astruar, and that this is why the three were placed in segregation. Defendants, in their motion for summary judgment, denied that Frazier was Asatruar. Plaintiff subsequently filed a "notice of Defendants' perjury and misstatements", asserting that a document filed by the defendants in *Miller v. Wilkinson*, Southern District of Ohio Case No. 2:98-cv-275, Doc. 520-1 at p. 3, identified Frazier as a member of the Asatru faith. In response to this Defendants offered a declaration by Bonnie Williams, a paralegal in the Corrections Litigation Unit of the Ohio Attorney General's Office. Ms. Williams stated that she had been present at an October 19, 2010 videoconference interview of Frazier, in which he stated that he was not a member of the Asatru religion. (Doc. 47-1 at 1-2.) Plaintiff thereupon filed a motion for sanctions, arguing that Defendants had wrongly deposed Frazier in his absence. (Doc. 48.)

Defendants are, as they have argued, permitted to interview witnesses in the absence of the opposing party. Such interviews do not constitute or amount to witness depositions, because they do not involve recording testimony taken under oath. Plaintiff's motion (Doc. 48) is therefore **DENIED**. The Court does not, however, base any part of its decision today upon Ms. Williams' testimony that she heard Frazier say that he was not a member of the Asatru religion. Fed. R. Evid. 802; Fed. R. Civ. P. 56(e)(1).

As the Magistrate Judge correctly found, Plaintiff has presented no genuine issues of material fact to rebut Defendants' claims and evidentiary showing that Plaintiff, Frazier, and Gibson were detained as part of the "Wolfman" investigation and that Plaintiff's release from administrative segregation was erroneously delayed.  Plaintiff has offered in rebuttal only arguments that Defendants' story is implausible or that the Court should infer from the circumstances that the detention was related to Plaintiff's recent litigation hearing.  To defeat a motion for summary judgment, however, he is obligated to provide evidence upon which the jury reasonably could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Defendants here are therefore entitled to summary judgment.

For the reasons set forth above, the Court **ADOPTS** the Report and Recommendation (Doc. 49) and **GRANTS** Defendants' motion for summary judgment (Doc. 18).  The Clerk of Court is **DIRECTED** to enter judgment for the defendants and to close this case.

    /s/   Gregory L. Frost
Gregory L. Frost
United States District Judge